In the Matter of the Application of INTER-CITY ASSOCIATES, INC., Petitioner, to Quash Subpœna Duces Tecum in a Proceeding Entitled THE PEOPLE OF THE STATE OF NEW YORK *v.* JOHN DOE.

Supreme Court, Special Term, Queens County, May 4, 1955.

*Samuel L. Meltz* for petitioner.

*T. Vincent Quinn, District Attorney* (*Lawrence Peirez* and *Eugene S. McQuage* of counsel), for People of the State of New York, respondent.

SAMUEL RABIN, J. This is a proceeding to quash, vacate or modify the subpœna duces tecum heretofore served upon the petitioner Inter-City Associates, Inc., by the District Attorney of Queens County, requiring Charles Silverman, as secretary of said petitioner, to appear before the Grand Jury of the County of Queens on a certain day as a witness in a criminal action prosecuted by the People of the State of New York against John Doe, and requiring the production of certain books and records of petitioner, therein described.

The basic objections of the petitioner are (a) that the subpœna " is so broad that it would require the disclosure by the petitioner of all of its real estate activities during the past three years, the volume of which is over $4,500,000. and involving over 450 separate real estate transactions, none of which are germane to any second mortgage investigation "; (b) that such subpœna " does not in any wise identify the nature of the proceeding

designated ' as a criminal action ' so as to indicate what particular papers the district attorney or the grand jury would require to be produced ''; (c) that the investigation by the District Attorney is not a criminal investigation inasmuch as press releases and reported interviews by the press of the District Attorney and his assistants indicate that the investigation is not for the violation of any provision of existing criminal statutes but for the purpose of changing existing law pursuant to which mortgages executed by corporate borrowers are not subject to usury laws; (d) that since the nature of the investigation has not been set forth in the subpœna, the District Attorney should advise the petitioner whether any information it may be required to furnish is to be used in the prosecution of any of its officers or employees, in which event they should be advised that such information may be refused under the protection of the constitutional privilege against self-incrimination; and finally (e) that since petitioner is a possible defendant in a criminal proceeding it should not be required to attend as a witness to testify against itself.

The answer of the District Attorney denies the material allegations of the petition and alleges that the February, 1955 Grand Jury of the County of Queens is presently in session; that it has already received evidence " indicating the possible commission of crimes concerning certain real estate transactions in this County. Further investigation into the commission of crime or a series of crimes is necessary and the evidence requested in the subpœna duces tecum is necessary and relevant to this inquiry." The District Attorney urges that none of the grounds upon which the subpœna has been challenged is valid; that the records which are sought to be examined are readily identifiable by petitioner and its officer and that no undue hardship will result to it since the Grand Jury rooms are only a few short blocks from its office. Indeed, the District Attorney is willing to examine the records under a subpœna in reverse order for the three years during which petitioner has been concededly doing business, starting with the year 1954, and returning the books of each year within a week before starting another year.

The law with respect to subpœnas duces tecum issued by District Attorneys for the production of books before a grand jury was summarized by Mr. Justice COHN, writing for the unanimous Appellate Division, First Department, in *Matter of Manning* v. *Valente* (272 App. Div. 358, 361, affd. 297 N. Y. 681) as follows: " A subpœna duces tecum issued by the District Attorney direct-

ing the production before the grand jury of books and papers of a corporation is a mandate of the court and its disobedience may be punished as a criminal contempt. (*People ex rel. Drake* v. *Andrews,* 197 N. Y. 53; *Matter of Spector* v. *Allen,* 281 N. Y. 251, 259.) The grand jury is an arm of the court. Its subpœnas are presumptively valid and can only be challenged by an affirmative showing of impropriety. The People are not required to make public disclosure of the purpose of the inquiry in order to obtain compliance with its mandates. No witness may avoid obedience to the directions of the court without establishing by concrete evidence that the subpœna was issued in bad faith or that it is for some other reason invalid. These rules inhere in the very nature of the grand jury's functions and of its authority. (*Matter of Greenleaf,* 176 Misc. 566, 569, determination confirmed, *sub nom. Matter of Greenleaf* v. *Goldstein,* 266 App. Div. 658, affd. 291 N. Y. 690.) Nor may petitioner refuse to produce documents and records under a subpœna duces tecum unless he can show that the documents are so unrelated to the subject of inquiry as to make it obvious that their production would be futile as an aid to the court. (*State Educational System* [*Teachers Union*], 285 N. Y. 1, 9.) Where, as here, the documents sought are not produced before the grand jury because of alleged irrelevancy, the court is called upon to determine the question as to whether the claim is valid.''

An examination of the record in the *Manning* case (*supra*), discloses that the subpœna duces tecum there involved was at least as broad as the one challenged here, and so there is no merit to the petitioner's objection that the subpœna is too sweeping in scope and oppressive in effect, particularly since the District Attorney has offered to co-operate by examining the records one year at a time, returning those produced within a week before starting another year.

Nor is there any merit to the petitioner's contention that the District Attorney should advise it whether any information it may be required to furnish is to be used in the prosecution of any of its officers or employees, and that since petitioner may possibly be a defendant in a criminal proceeding, it should not be required to attend as a witness to testify against itself. The mere statement of these objections establishes their fatuity.

It is not necessary for a grand jury to reveal precisely to a witness the subject of an inquiry (*Blair* v. *United States,* 250 U. S. 273, 282) and there is no obligation to establish a case in advance of the production of the testimony. Such a requirement would frustrate the investigation and paralyze it '' if argu-

ments as to materiality or relevance, however appropriate at the hearing, are to be transferred upon a doubtful showing to the stage of a preliminary contest as to the obligation of the writ.'' (*Matter of Edge Ho Holding Corp.*, 256 N. Y. 374, 381–382.)

In addition, nothing is better settled than the long-recognized rule that a corporate officer may not refuse to produce books and records on the ground that the disclosure might incriminate the corporation or its officer. As was held by the Supreme Court of the United States in *United States* v. *White* (322 U. S. 694, 699), the privilege against self incrimination is a *personal* one which cannot be utilized by or on behalf of any organization such as a corporation, and individuals when acting as representatives of a collective group may not be said to be exercising their personal rights, nor to be entitled to their purely personal privileges. '' Rather they assume the rights, duties and privileges of the artificial entity or association of which they are agents or officers and they are bound by its obligations. In their official capacity, therefore, they have no privilege against self-incrimination. And the official records and documents of the organization that are held by them in a representative rather than in a personal capacity cannot be the subject of the personal privilege against self-incrimination, even though production of the papers might tend to incriminate them personally.''

Petitioner's claim that the District Attorney has not sufficiently demonstrated the relevancy of the subpœnaed records to the subject matter of the inquiry by the Grand Jury is without merit in view of the oral statements made by the assistant district attorney in charge of the inquiry and his supplemental affidavit sworn to April 15, 1955, embodying such statements. Specifically the assistant district attorney states as follows: '' As an extension of the oral argument before the Court, the facts briefly are that numerous complaints pertaining to real estate transactions involving one and two family homes in Queens were received at our office. Preliminary investigation revealed that the pattern was that an advertisement would appear in various newspapers offering to loan money to home owners. * * * Once the home owner appeared at the office of the borrower, [sic — lender] persuasive sales talk, double talk and false and misleading representations were made as to the nature of the loan. Subsequently the home owner would wake up when the transaction was over and find that he was paying as much as a 65% bonus for a second mortgage plus 6% interest on the principal and bonus for three years. In this instance the home owner would discover after the transaction was closed, much to

his regret, that a corporation was formed without authority from him. That the title of his home was transferred to this corporation. * * * In employing this device the lenders, according to the evidence presently in the hands of the District Attorney and before the Grand Jury, violated the Penal Laws of our state. There is also evidence that Section 421 of the Penal Law, pertaining to misleading advertisements, Section 442, the placing of insurance by the lender, Section 926-a, false statements, Section 952, pertaining to false statements for advertisements as to securities were violated. * * * Lest there be any misunderstanding, there has been testimony that some of the applicants cannot speak, write or read the English language, testimony that many home owners never heard of the word ' corporation ' or knew of the formation of a ' corporation ' or authorized the formation of a ' corporation ', testimony that many of these documents, mortgages, deeds and other legal documents were signed in blank without the knowledge or consent of the home owners as to there [sic] use or contents, testimony that the amount of the loan was raised after signatures were affixed to the documents, testimony that legal documents contained the unauthorized signature of these home owners and multifarious other violations."

The foregoing is clearly sufficient to support a direction that the subpœna be obeyed. (*People* v. " *John Doe* " [*Byk*], 247 App. Div. 324, 326, affd. 272 N. Y. 473; see, also, *Matter of Spector* v. *Allen,* 281 N. Y. 251, 258.)

" Relevancy is not a matter of degree. Any circumstance permitting ' intelligent estimate ' of relevancy is sufficient to support a direction that the subpœna's mandate be obeyed ". (*Matter of Manning* v. *Valente,* 272 App. Div. 358, 362, *supra.*) The grand jury is " a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime." (*Blair* v. *United States,* 250 U. S. 273, 282, *supra.*) The relevancy of testimony to be submitted to a grand jury has been held to be of no concern to a witness before that body. (*United States* v. *McGovern,* 60 F. 2d 880, certiorari denied, *McGovern* v. *United States,* 287 U. S. 650.) As was stated in that case, at page 889: " Indeed, the purpose of the grand jury's inquiry is to get at facts which will enable it to determine whether formal charges should be made against some one and not to try offenders. Hendricks v. United States, 223

U. S. 178, 32 S. Ct. 313, 56 L. Ed. 394. As the investigation proceeds, whatever leads may be developed must be run down to find as accurately as possible what the truth is, and any false testimony which impedes and hampers the course of the investigation is material in the sense that it has a tendency to affect the ultimate action of the grand jury. Carroll v. United States (C. C. A.) 16 F. (2d) 951.)''.

Accordingly, the application is in all respects denied and the subpœna duces tecum here involved sustained, except that pursuant to the agreement of the District Attorney above-referred to, the records under subpœna will be produced one year at a time commencing with the year 1954.

Settle order on notice.