Larry **CARTER**, Steve Shead, and Fred Crawford, Appellants,

v.

**UNITED STATES** of America, Appellee.

No. 24554.

United States Court of Appeals Ninth Circuit.

Oct. 9, 1969.

Allan Brotsky (argued), Charles R. Garry, David E. Pesonen of Garry, Dreyfus, McTernan & Brotsky, San Francisco, Cal., for appellants.

Victor C. Woerheide (argued), Jerome K. Heilbron, Richard L. Darst, Attys., Dept. of Justice, Washington, D. C., Cecil F. Pool, U. S. Atty., Jerrold M. Ladar, Asst. U. S. Atty., San Francisco, Cal., for appellee.

Paul N. Halvonik (argued) and Charles C. Marson, ACLU, San Francisco, Cal., of counsel, Robert Allen Sedler, Lexington, Ky. (ACLU), Melvin L. Wulf, Eleanor Holmes Norton, New York City, (ACLU), for amicus curiae.

Before HAMLIN and DUNIWAY, Circuit Judges, and SMITH *, District Judge.

DUNIWAY, Circuit Judge:

In this case, each of the appellants was subpoenaed to appear before a Federal Grand Jury, and did so. On May 14, 1969, each was asked a number of questions and refused to answer each question on the ground that his answer might incriminate him.[1] The next day, the government applied for orders granting each witness immunity and ordering him to testify. Each application alleged that the Grand Jury was "inquiring into matters involving interstate travel to organize, promote and encourage riots and teaching and demonstrating the use and making of firearms and explosives." The former activity is covered by the so-called anti-riot act, 18 U. S.C., Part I, ch. 102, §§ 2101, 2102, added by Pub.L. 90–284, April 11, 1968, Title I, § 104(a), 82 Stat. 75. The latter activity is covered by 18 U.S.C. § 231(a) (1), which is part of the "Civil Obedience Act of 1968," added as ch. 12 of Part I of Title 18 U.S.C. by Pub.L. 90–284, supra, Title X § 1002(a). The application was made under 18 U.S.C. § 2514, which was added as part of Title III of the "Omnibus Crime Control and Safe Streets Act of 1968," Pub.L. 90–351 § 802, June 19, 1968, 82 Stat. 216.

Immunity may be conferred and the witness may be compelled to testify under § 2514 only if the proceeding involves violation of 18 U.S.C. Part I ch. 119 or any offense named in § 2516. Section 2101 is part of chapter 102, named in § 2516(1) (a). Nowhere in § 2516 is section 231(a) (1), or chapter 12, of which it is a part, named.

Appellants responded with a cross motion requesting injunctive and declaratory relief against application of both § 2101 and § 2514. They alleged that the statutes in question are unconstitutional.[2] After a hearing, the trial court held that both of the statutes in question are constitutional and granted the government's applications. It entered written orders, granting immunity to each

---

1. What the witnesses most often said was "Fifth Amendment," or "Plead the Fifth," or "Take the Fifth." Yet such is the debasement of our verbal coinage that no one here asserts that this is an inadequate way to claim one's privilege against self-incrimination, even though the Fifth Amendment to the Constitution establishes at least four other rights or privileges.

2. Appellants requested that their constitutional attack on the statutes be determined by a three-judge court pursuant to 28 U.S.C. § 2282. The district court denied the cross motion for a three-judge panel. Appellants assigned this denial as error, but do not now argue the point.

appellant and ordering each to answer each question that he had refused to answer. Later, each appellant appeared in court, was advised of the granting of immunity, and was ordered by the judge to answer the questions that he had previously refused to answer. Each appellant, upon advice of counsel, refused to answer and was adjudged guilty of contempt of court. These appeals followed:

1. *Appellants have no standing to contest the constitutionality of 18 U.S.C. § 2101.*

■ Each appellant was before the Grand Jury as a witness, but he was not under indictment, nor accused of any crime. In his capacity as witness, he lacked standing to question the constitutionality of the statute which was the basis of the Grand Jury's investigation. The Supreme Court decided this question in Blair v. United States, 1919, 250 U.S. 273, 279, 281–283, 39 S.Ct. 468, 63 L.Ed. 979. See also Howat v. Kansas, 1921, 258 U.S. 181, 42 S.Ct. 277, 66 L. Ed. 550; United States ex rel. Rosado v. Flood, 2 Cir., 1968, 394 F.2d 139. Compare United States v. Williams, 1951, 341 U.S. 58, 71 S.Ct. 595, 95 L.Ed. 747. We are cited to no case that has weakened or limited the authority of *Blair*.

We do not think that it makes a difference that we are dealing with an immunity statute. That statute, § 2514, authorizes the court to order the witness to testify, and provides that the witness shall not be excused on the ground of self-incrimination and that he shall be immune from prosecution as to anything concerning which he had been compelled to testify. In *Blair* a witness who claimed no privilege declined to testify on the ground that the statute proscribing the offense being investigated was unconstitutional. He was found guilty of contempt, and his conviction was affirmed. Here, because each appellant has been granted immunity, validly, as we will show, he is also subject to being compelled to testify. As in *Blair*,

"He is not entitled to urge objections of incompetency or irrelevancy, such as a party might raise, for this is no concern of his, Nelson v. United States, 201 U.S. 92, 115, 26 S.Ct. 358, 50 L.Ed. 673.

"On familiar principles, he is not entitled to challenge the authority of the court or of the grand jury, provided they have a *de facto* existence and organization.

"He is not entitled to set limits to the investigation that the grand jury may conduct. * * * [i]n our system examination of witnesses by a grand jury need not be preceded by a formal charge against a particular individual. Hale v. Henkel, 201 U.S. 43, 65, 26 S. Ct. 370, 50 L.Ed. 652. It is a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime. As has been said before, the identity of the offender, and the precise nature of the offense, if there be one, normally are developed at the conclusion of the grand jury's labors, not at the beginning. Hendricks v. United States, 223 U.S. 178, 184, 32 S.Ct. 313, 56 L.Ed. 394.

"And, for the same reasons, witnesses are not entitled to take exception to the jurisdiction of the grand jury or the court over the particular subject-matter that is under investigation. In truth it is in the ordinary case no concern of one summoned as a witness whether the offense is within the jurisdiction of the court or not. At least, the court and grand jury have authority and jurisdiction to investigate the facts in order to determine the question whether the facts show a case within their jurisdiction." (250 U.S. pp. 282–283, 39 S.Ct. p. 471)

Here, as the government's applications state, and as many of the questions asked the witnesses show, the grand jury was investigating possible viola-. tions of § 2101. If an indictment of anyone under § 2101 should result, the court, in trying the case, would certainly have jurisdiction to determine the constitutionality of § 2101. This is the usual way in which such a question is raised. Usually it can only be decided after the facts in a particular case are known. All courts properly hesitate to decide important constitutional questions in a factual vacuum. And the facts will often first be developed in a grand jury investigation. The granting of immunity to some witnesses may, in a particular case, be the only way to get the facts. Yet appellants' argument would defeat that inquiry, not at the behest of one accused of crime, but at the behest of a witness who might not have been accused if he had waived his privilege and who cannot be accused now that he has asserted it. We hold that, under *Blair*, such a witness has no standing to challenge the validity of § 2101. The immunity granted to appellants will not be destroyed if it be later held that § 2101 is unconstitutional, either on its face or as applied.

2. *18 U.S.C. § 2514 is valid.*

■ Appellants do have standing to raise this question. Unless the immunity granted is co-extensive with the appellants' privilege not to incriminate themselves, the statute does not fully protect them, and they cannot be compelled to testify. The statute is being applied directly to them.

But we can find no constitutional weakness in § 2514. Similar statutes have been upheld many times. The leading case is Ullmann v. United States, 1956, 350 U.S. 422, 76 S.Ct. 497, 100 L. Ed. 511, which upheld an almost identical statute. In so doing, the court followed and reaffirmed a similar holding in Brown v. Walker, 1896, 161 U.S. 591, 16 S.Ct. 644, 40 L.Ed. 819. To the same

effect is Reina v. United States, 1960, 364 U.S. 507, 81 S.Ct. 260, 5 L.Ed.2d 249. Section 2514 was upheld in In re Parker, 10 Cir., 1969, 411 F.2d 1067.

Appellants say that even though they may now be fully protected from prosecution, they are not protected from other possible adverse consequences of their testimony, such as loss of job (Garrity v. New Jersey, 1967, 385 U.S. 493, 87 S. Ct. 616, 17 L.Ed.2d 562), or the right to practice a profession (Spevack v. Klein, 1967, 385 U.S. 511, 87 S.Ct. 625, 17 L. Ed.2d 574). But in those cases such consequences were used to compel "waiver" of the privilege. Here, the privilege is preserved by the immunity granted. A similar argument was rejected in Ullmann, *supra*, 350 U.S. at 430–431, 76 S. Ct. 497.

Appellants say that § 2514 does not grant full immunity because it says "nor shall testimony so compelled be used as evidence in any criminal proceeding * * * against him in any court," thus not guarding against the use of possibly incriminating documents that they may be compelled to produce. To this, there are two answers. The first is that no production of any documents is here involved. The court's orders only direct that certain questions be answered. The second is that appellants overlook the first portion of the sentence that they quote: "No such witness shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he is compelled * * * to testify or produce evidence * * *." The language of § 2514 is similar to that of the laws upheld in the cases we have cited.

■ Appellants say that § 2514 violates the Tenth Amendment in that it hampers the states in prosecuting offenses that are contrary to their laws, thereby trenching upon the reserved powers of the states. This argument was rejected in Reina, *supra*, 364 U.S. at 510–512, 81 S.Ct. 260.

Appellants say that the court could not order them to answer questions relating to possible violation of 18 U.S.C. § 231(a) (1) because it is not one of the acts mentioned in § 2514, either directly or by reference to the acts listed in § 2516. This overlooks the fact that acts denounced by § 231(a) (1) can be committed in violating § 2101. In investigating possible violations of § 2101, the grand jury can require answers to any questions even remotely relevant to that section. The immunity is coextensive with the inquiry. See In re Bart, 1962, 113 U.S.App.D.C. 54, 304 F.2d 631; United States v. Harris, 2 Cir., 1964, 334 F.2d 460, reversed on other grounds, 1965, 382 U.S. 162, 86 S.Ct. 352, 15 L.Ed.2d 240.

3. *Appellants were not entitled to a hearing on the question whether the government obtained information about them by illegal wiretapping.*

Appellants' showing was that they are members of the Black Panther Party, that some of the questions related to their activities as such members, that one question related to meetings presided over by one Bobby Seale, that certain conversations of Seale had been overheard by wiretaps, as shown by an affidavit of the Attorney General filed in an action pending in the United States District Court for the Northern District of Illinois in which Seale is a defendant. If we assume (we certainly do not decide) that this shows that the questions asked appellants were based upon such wiretapping, the assumption does not help appellants. As witnesses, they have no standing to question the source of the government's information. It will be time enough to do that if any of them should ever become a defendant, a most unlikely event in view of the immunity granted them. United States ex rel. Rosado v. Flood, 2 Cir., 1968, 394 F.2d 139, 141–142, cert. denied, 393 U.S. 855, 89 S.Ct. 111, 21 L.Ed.2d 124 (1968).

Each of the orders appealed from is affirmed.