## In re GRAND JURY SUBPOENA 84-1-24 # 1 To Robert BATTLE, III.

### No. 84-1273.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 28, 1984.

Decided Nov. 14, 1984.

PHILLIPS, Senior Circuit Judge.

The Government appeals the order of the district court quashing in part a grand jury subpoena issued in a Department of Labor investigation concerning alleged violations of 29 U.S.C. § 501(c).[1]

## I

The proposed subpoena was directed to Robert Battle, III, who served as Director of Region 1–A of the United Automobile Workers from 1976 until his retirement in 1983.

Section 501(c) is a provision of the Labor-Management Reporting and Disclosure Act, 29 U.S.C. §§ 401–531 (Landrum-Griffin Act). Section 431 requires unions to report expenditures of union funds to the Secretary of Labor.

Battle concedes that, upon assuming office, he established a private fund deposited in a separate bank account, identified as the "Buddy Battle Convention Fund." Battle asserts that the private fund was used for social, political and charitable activities of UAW Region 1–A, including fund raising dinners and dances, social events, testimonial dinners, retirement gifts, flowers for deceased union members, contributions to charitable organizations and civil groups and expenses of Region delegates at UAW National Conventions. Battle contends that the fund in the private account was not a Union asset under the Landrum-Griffin Act. Union funds, he states, are held exclusively by the UAW International and disbursed only by voucher for clearly designated Union functions. Battle concedes that the private account was never reported by the International Union on its annual disclosure statements.

Leonard R. Gilman, U.S. Atty., Joel M. Shere, Maura Corrigan, argued, Asst. U.S. Attys., Detroit, Mich., for appellant.

Daniel J. Cramer, Peter J. Kelley, argued, Ann Arbor, Mich., for appellee.

Before EDWARDS and CONTIE, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

## II

On the basis of a newspaper article published in the *Detroit Free Press*, the Department of Labor began an investigation

1. 29 U.S.C. § 501(c) provides:
   Any person who embezzles, steals or unlawfully and willfully abstracts or converts to his own use, or the use of another, any of the moneys, funds, securities, property, or other assets of a labor organization of which he is an officer, or by which he is employed, directly or indirectly, shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

of Battle concerning alleged violations of 29 U.S.C. § 501(c). On October 19, 1983 a federal grand jury subpoena was served on Battle directing him to produce the following records on November 22, 1983:

> All books, papers, records, memoranda, and data of the "Buddy Battle Convention Fund" and the "Flower Fund" for the period from July 1, 1979 through September 30, 1983. Also, all books, papers, records, memoranda and data of all subsidiary funds of United Automobile Workers Region I–A for the period from July 1, 1979 through September 30, 1983. Such records to include but are not limited to, bank statements, pass books, cancelled checks, voided checks, check stubs, receipts and disbursement ledger and minutes of meetings. The subsidiary fund records would not include records of the "Rotating Checkbook" and the "Rotating Retiree Checkbook".

On November 18, 1983 Battle filed a Motion to Quash Grand Jury Subpoena in which he denied possession or knowledge of any records concerning the Flower Fund and claimed that the Buddy Battle Convention Fund was not a Union asset and, therefore, that records pertaining to it were not relevant to any possible violations of 29 U.S.C. § 501(c).

The Government answered the motion and submitted an affidavit and other documents. The Government argued that the records related to the § 501(c) investigation and that the determination whether the fund was a Union asset was a decision for the grand jury. It asserted that the source of the fund, the manner in which the money was raised, and the treatment of the fund all bear on this determination.

The district court conducted a hearing on the motion to quash. Battle argued the disbursement records were not a legitimate subject of investigation because no Union funds were in the private account. The Government offered proof, in the form of testimony, to show that local dues money was used to buy tickets to the Region cabaret (a Union fund raiser) and that ticket money then went into Battle's private

fund, that Union staff members were required to work at the cabaret, that Battle would overcharge the Union for charter flights and members' per diems while attending conventions and place the excess in the convention fund, and that he maintained Union money raised for charitable causes in the convention fund, all in violation of 29 U.S.C. § 501(c). The Government contended that it needed the additional evidence to substantiate these charges of embezzlement of Union funds.

The district court ruled that it would enforce the subpoena of records regarding deposits but quashed those parts of the subpoena relating to expenditures. The court stressed that it would reconsider the motion to quash after the Government established from records of deposits that Union assets were deposited in the private account. The district court denied the Government's motion to reconsider and the Government appeals.

We reverse.

### III

In *United States v. Dionisio*, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973), the Supreme Court upheld a grand jury subpoena of voice exemplars against fourth and fifth amendment challenges. In evaluating a grand jury's investigative powers, the Court held: "The Fourth Amendment provides protection against a grand jury subpoena *duces tecum* too sweeping in its terms 'to be regarded as reasonable.'" Id. at 11–12, 93 S.Ct. at 770–71 (quoting *Hale v. Henkel*, 201 U.S. 43, 76, 26 S.Ct. 370, 380, 50 L.Ed. 652 (1906)). The Court emphasized that: "'Grand juries are subject to judicial control and subpoenas to motions to quash.'" 410 U.S. at 12, 93 S.Ct. at 770 (quoting *Branzburg v. Hayes*, 408 U.S. 665, 708, 92 S.Ct. 2646, 2670, 33 L.Ed.2d 626 (1972)). The Court also emphasized the broad powers of a grand jury: "'Because its task is to inquire into the existence of possible criminal conduct and to return only well-founded indictments, its investigative powers are necessarily broad.'" 410 U.S. at 13, 93 S.Ct. at 771

(quoting *Branzburg*, 408 U.S. at 688, 92 S.Ct. at 2660). Moreover, the scope of a grand jury's inquiries:

"... is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime. As has been said before, the identity of the offender, and the precise nature of the offense, if there be one, normally are developed at the conclusion of the grand jury's labors, not at the beginning. *Hendricks v. United States*, 223 U.S. 178, 184 [32 S.Ct. 313, 316, 56 L.Ed. 394 (1912)]." *Blair v. United States*, 250 U.S. [273, 282, 39 S.Ct. 468, 471, 63 L.Ed. 979 (1919)].

410 U.S. at 13 n. 12, 93 S.Ct. at 771 n. 12.

Because the Court found Dionisio raised no valid fourth amendment claim, it held that there could be no requirement of a "preliminary showing of reasonableness" to justify the grand jury subpoena. *Id.* at 16, 93 S.Ct. at 772. "Any holding that would saddle a grand jury with minitrials and preliminary showings," the Court held, "would assuredly impede its investigation and frustrate the public's interest in the fair and expeditious administration of the criminal laws." *Id.* at 17, 93 S.Ct. at 773 (citations omitted). Therefore, the Court held, the grand jury "must be free to pursue its investigations unhindered by external influence or supervision so long as it does not trench upon the legitimate rights of any witness called before it." *Id.* at 17–18, 93 S.Ct. at 773. *See also United States v. Mara*, 410 U.S. 19, 22, 93 S.Ct. 774, 776, 35 L.Ed.2d 99 (1973) (no preliminary showing of reasonableness required for enforcement of subpoena of handwriting and voice exemplars).

The Government argues that the district court erred by requiring a preliminary showing of relevance. Appellee Battle contends that the court "merely asked the government to explain how the records sought could possibly be relevant to the grand jury investigation." He argues also that the district court "properly asked the government to make a preliminary showing that the material sought was relevant to the investigation." He relies on *In re Grand Jury Subpoena (Dorokee)*, 697 F.2d 277, 281 (10th Cir.1983), which quotes *In re Grand Jury Proceedings (Schofield)*, 486 F.2d 85, 92–93 (3d Cir.1973).

■ The better reasoned approach, which we adopt, is not to require the Government to bear the burden of making a preliminary showing of relevancy. This approach is in line with the Supreme Court's opinion in *United States v. Dionisio, supra*, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973), and with the clear majority of other courts that have considered the issue. *In re Slaughter*, 694 F.2d 1258, 1260 (11th Cir.1982); *In re Liberatore*, 574 F.2d 78, 83 (2d Cir.1978); *In re Grand Jury Proceedings (Guerrero)*, 567 F.2d 281, 283 (5th Cir.1978); *In re Hergenroeder*, 555 F.2d 686 (9th Cir.1977) (per curiam). The burden is on the party seeking to quash the subpoena to show "that the information sought bears 'no conceivable relevance to any legitimate object of investigation by the federal grand jury,'" *Liberatore*, 574 F.2d at 83 (citation omitted), or that there has been "harassment or prosecutorial misuse of the system," *Guerrero*, 567 F.2d at 283 (citation omitted). Only after such a showing will the Government be required to make a "minimal showing" of the relevancy of subpoenaed evidence. *In re Horowitz*, 482 F.2d 72, 79–80 (2d Cir.), *cert. denied*, 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973). *See also Liberatore*, 574 F.2d at 82–83; *Guerrero*, 567 F.2d at 283.

■ We conclude that appellee Battle did not carry his burden of showing that the documents of expenditures had no conceivable relevance to a violation of 29 U.S.C. § 501(c). The district court therefore erred in quashing the subpoena. The Government offered proof to show that Battle had deposited Union funds in the private account. Records of expenditures from this account then became relevant to proof of the § 501(c) offense. The Government's proof that these funds were not purely

private in nature because of alleged deposits of Union dues was sufficient to require production of the records of expenditures.

Records of expenditures went to the essence of the offense charged here. Battle did not establish that expenditures had no conceivable relevance or that the Government sought them for purposes of harassment or for any other improper reason. Absent such a showing, the Government should not be required to prove its case piecemeal or to argue its case in "minitrials" in order to proceed with the grand jury investigation. Accordingly, the district court erred in denying enforcement of the subpoena.

The decision of the district court is REVERSED, and the case is remanded to that court for further proceedings not inconsistent with this opinion.