John C. DABNEY, Jr., Esq. as Receiver under Chapter XI of the Federal Bankruptcy Act for Sun Motor Lodge, Inc., and Lon L. Day, Jr., and J. Donally Smith, Individually

v.

INVESTMENT CORPORATION OF AMERICA.

Civ. A. No. 76-2447.

United States District Court, E. D. Pennsylvania.

May 25, 1979.

Bruce L. Phillips, Venzie, Phillips & Warshawer, Allan M. Dabrow, Philadelphia, Pa., for plaintiffs.

Edward M. Dunham, Jr., Spector, Cohen, Hunt & Rosen, Philadelphia, Pa., for defendant.

## MEMORANDUM OPINION & ORDER

VanARTSDALEN, District Judge.

This motion to compel raises the question of whether the attorney-client privilege attaches to confidential communications made to a law student or law school graduate who has not yet been admitted to the bar. I conclude under the facts of this case that it does not.

In early 1974, while he was still a third-year law student, Gerald Katzoff started working as a part time, and later full time, administrative assistant for defendant Investment Corporation of America (ICA). He graduated from law school in May of that year and was apparently admitted to the bar in October. Subsequently, he continued to work for ICA in his new capacity as house counsel. Recently he was called to give deposition testimony regarding his knowledge and participation in certain events involving ICA that occurred prior to his graduation from law school and admission to the bar. The deposition ground to a halt after repeated objections by counsel for ICA, a Mr. Dunham, on the basis of ICA's attorney-client privilege. The parties agreed to postpone the remainder of the deposition until this court could rule on the applicability of the privilege.

■ The attorney-client privilege protects from disclosure confidential communications made for the purpose of obtaining a lawyer's professional advice and assistance. *Cohen v. Uniroyal, Inc.*, 80 F.R.D. 480, 482 (E.D.Pa.1978). It has long been held that the privilege applies only to members of the bar of a court or their subordinates. *United States v. United Shoe Machinery Corp.*, 89 F.Supp. 357, 358 (D.Mass.1950). *See, e. g., Duplan Corp. v. Deering Milliken, Inc.*, 397 F.Supp. 1146 (D.S.C.1975); *Bird v. Penn Central Co.*, 61 F.R.D. 43 (E.D.Pa.1973); *Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.*, 294 F.Supp. 1148 (E.D.Pa.1969). Examples of such protected subordinates would include any law student, paralegal, investigator or other person acting as the agent of a duly qualified attorney under circumstances that would otherwise be sufficient to invoke the privilege. 8 Wigmore, Evidence § 2301 (McNaughton Rev. 1961). Courts have recognized an exception, however, to the general requirement that an attorney-confidant be a member of the bar, in cases where the client is genuinely mistaken as to the attorney's credentials. *Id.* § 2302.

■ The facts of this case clearly do not bring it within the above exception, since it appears that ICA, through its president, Richard J. Micheel, was well aware that Mr. Katzoff had not been admitted to the bar of any state until late 1974.

Moreover, it does not appear that Mr. Katzoff was acting as the agent or associate of any duly licensed attorney. ICA's prior house counsel, Lawrence Hirsch, apparently remained in that position until the summer of 1974, a fact that in itself, ICA argues, places Mr. Katzoff in the same position as a new and not-yet-licensed associate in a law firm. ICA nowhere asserts, however, that Mr. Katzoff was acting under the control or supervision of Mr. Hirsch, and I am not prepared to infer such a relationship from the mere fact that they were employed by the same company. My conclusion that Mr. Katzoff was not associated with Mr. Hirsch in the practice of law on behalf of ICA is further reinforced by Mr. Katzoff's own assertion, at page 17 of his deposition, that he did not begin functioning as an attorney for ICA until his admission to the bar.

Defendant's argument, therefore, is reduced to the contention that its attorney-client privilege may be preserved by a bona fide mistake not simply as to whether Mr. Katzoff was a member of the bar, but as to whether in all respects save formal licensing, he was a qualified professional legal advisor. ICA argues that because Mr. Katzoff was performing the duties of an attorney, was regarded and treated as an attorney, and was made privy to certain confidential information that would have been disclosed only to an attorney, the attorney-client privilege should attach to those communications and should not be deterred by the mere absence of formal certification. I

conclude that to recognize an attorney-client privilege under the circumstances of this case would contravene established case law and set a highly questionable precedent.

Criteria for admission to the bar are carefully established and maintained in order to guarantee some minimum level of competence within the legal profession. To extend the attorney-client privilege to communications made to a law student unsupervised by a duly qualified lawyer would, to some extent, encourage the public to entrust its legal concerns and seek legal advice from persons as yet unqualified to engage in the practice of law. It would, to that extent, undermine the power of the state to regulate this most sensitive of professions, whose members are viewed, in the Preamble to the Pennsylvania Code of Professional Responsibility, as "guardians of the law, playing a vital role in the preservation of society." It would permit the claiming of the privilege not simply where one party to a conversation is an attorney whose professional advice is sought, but in virtually any situation where legal confidences are exchanged. It would unnecessarily blur the dividing line between qualified and unqualified attorneys, to the certain dismay of the lay public and the ultimate detriment of the legal profession.

I must also specifically reject defendant's suggestion that Mr. Katzoff's work experience prior to his admission to the bar should be taken into consideration in determining whether he qualifies as a "professional legal advisor" for purposes of the attorney-client privilege. A court should be free to weigh a claim of privilege without having to evaluate each item on an attorney's resume. The job of individually assessing each attorney's qualifications to practice law should remain where it is, with the State Board of Law Examiners, rather than with the courts.

Almost ninety years ago, the Pennsylvania Supreme Court held that confidential legal communications with a law student were no more privileged than similar communications with a blacksmith. *Schubkagel v. Dierstein*, 131 Pa. 46, 54, 18 A. 1059, 1060 (1890). Today I come to substantially the same conclusion. There is no reason to encourage the relation between client and legal advisor except where the legal advisor has been formally admitted to the office of attorney or counselor as duly qualified to give legal advice. 8 Wigmore, Evidence § 2300(1) (McNaughton Rev. 1961). To hold otherwise would poorly serve the purpose of the privilege, which is to promote the freedom of consultation that is essential to full and effective legal representation. *Cohen, supra* at 483. It is clear, therefore, that admission to the bar is not the superfluous formality that defendant says it is.

Because in this case Mr. Katzoff was neither a fully qualified attorney nor the agent of such an attorney, confidential communications between him and defendant ICA are not properly subject to a claim of attorney-client privilege. Plaintiffs' motion to compel discovery will therefore be granted.