**In re Grand Jury Subpoena Duces Tecum Served Upon PHE, INC., d/b/a Adam and Eve.**

United States District Court, W.D. Kentucky, Louisville Division.

May 21, 1992.

Terry M. Cushing, Asst. U.S. Atty., Louisville, Ky.

David S. Rudolf, Thomas K. Maher, Beskind and Rudolf, P.A., Chapel Hill, N.C., for movant, PHE, Inc., d/b/a Adam and Eve.

## MEMORANDUM OPINION

SIMPSON, District Judge.

This matter stands submitted on PHE, Inc.'s motion to quash a grand jury subpoena issued to it on November 12, 1991,[1] by a federal grand jury sitting in the Western District of Kentucky.

---

1. PHE's original motion to quash concerned a grand jury subpoena issued to it on April 9, 1990. The grand jury subsequently issued PHE a subpoena on November 12, 1991. The parties have adopted their prior pleadings as well as filed supplemental memoranda concerning the latest grand jury subpoena. While our analysis is focused on the most recent grand jury subpoena, our opinion disposes of all existing issues between the parties.

I

PHE has filed both a motion and a supplemental motion to quash a grand jury subpoena *duces tecum*. In its initial motion to quash, PHE makes two separate arguments. PHE contends that the subpoena is overbroad, unreasonable, oppressive, and seeks information irrelevant to any legitimate investigation in this district. PHE also moves to quash on the ground that subpoena of the records would impermissibly chill the exercise of its rights under the first amendment. In support of its supplemental motion, PHE directs our attention to a preliminary injunction issued by the United States District Court for the District of Columbia restraining, *inter alia*, the United States Attorney for the Western District of Kentucky, Joseph M. Whittle,[2] from causing or permitting indictments to be returned against PHE.[3] *See PHE, Inc. v. United States Dept. of Justice*, 743 F.Supp. 15 (D.D.C.1990). Specifically, PHE contends that the preliminary injunction evidences the government's actions designed to chill PHE's exercise of its first amendment rights and, therefore, demonstrates the oppressive nature of the subpoena.

The United States maintains that PHE has failed to carry its burden of establishing sufficient grounds to justify quashing the subpoena *duces tecum*. The United States concedes that the United States Attorney for the Western District of Kentucky has been enjoined from indicting PHE. However, the United States contends that the injunction does not preclude grand jury investigation of PHE's alleged wrongdoing.

For the reasons set forth herein, we conclude that PHE has failed to show sufficient grounds to justify quashing the subpoena *duces tecum*.

II

We turn first to PHE's argument that the subpoena is overbroad, unreasonable, oppressive, and seeks information irrelevant to any legitimate investigative purpose.

The grand jury's power to issue a subpoena *duces tecum* is set forth in Fed. R.Crim.P. 17(c) which provides that "a subpoena may also command the person to whom it is directed to produce the books, papers, documents or other objects designated therein." By a prompt motion to quash, a person may object to compliance with the subpoena, and the court "may quash or modify the subpoena if compliance would be *unreasonable* or *oppressive*." *Id.* (emphasis added).

The United States Supreme Court squarely addressed the limits placed on a grand jury by Fed.R.Crim.P. 17(c), which governs the issuance of subpoenas *duces tecum* in federal criminal proceedings, in *United States v. R. Enterprises, Inc.*, —— U.S. ——, 111 S.Ct. 722, 112 L.Ed.2d 795 (1991). The Court explained that the standard set forth in Fed.R.Crim.P. 17(c) concerning reasonableness or oppression is not self-explanatory. Rather, "what is reasonable depends on the context." *Id.* 111 S.Ct. at 727 (quoting *New Jersey v. T.L.O.*, 469 U.S. 325, 337, 105 S.Ct. 733, 740, 83 L.Ed.2d 720 (1985)).

The Court reiterated that "a grand jury subpoena issued through normal channels is presumed to be reasonable." *Id.* 111 S.Ct. at 728. In determining whether there has been a showing of "unreasonableness" adequate to overcome the presumption, "the difficult position of subpoena recipients" must be balanced against "the strong governmental interests in affording grand juries wide latitude, avoiding minitrials on peripheral matters, and preserving a necessary level of secrecy." *Id.* The recipient of the subpoena seeking to

---

**2.** The preliminary injunction also issued against the United States Department of Justice, United States Attorney General Richard Thornburg, the National Obscenity Enforcement Unit ("NOEU"), and its Acting Director Patrick Trueman, and Assistant United States Attorney for the District of Utah Richard N.W. Lambert.

**3.** The president and principal owner of PHE, Inc., d/b/a Adam & Eve, Philip D. Harvey, was also a plaintiff in the District of Columbia action.

avoid compliance bears the burden of showing unreasonableness. *Id.*

PHE's arguments concerning unreasonableness may fairly be divided into two groups. First, PHE contends that the subpoena *duces tecum* is unreasonable because it is overbroad and, therefore, oppressive. Second, PHE asserts that the subpoena is unreasonable because it seeks information irrelevant to any legitimate investigatory purpose.

### A. Overbreadth

The grand jury subpoena *duces tecum* requires disclosure of certain business records of PHE. PHE assigns error to the requests, contending that the subpoena calls for production of essentially all of its business records. Specifically, PHE asserts that the request for documents "which were in existence" or which were issued after June 1, 1986, has no meaningful time limit. Furthermore, PHE asserts that production of all the requested documents will cripple its ability to function effectively. The United States contends that it has tailored the requests as narrowly as possible.

■ PHE contends that the request is overbroad because it covers a wide variety of documents. We are not persuaded that simply because various types of records are sought, the request is necessarily overbroad. The subpoena specifically identifies the records sought, and PHE has failed to demonstrate that the request is impermissibly broad in scope. There is no particularized showing that certain items or categories of items are unconnected to any reasonable investigative effort. We are thus left with a generic objection which is devoid of specifics. Our own review of the subpoena does not reveal obvious facial infirmity due to overbreadth.

PHE next argues that the sheer volume of the requested documents renders the subpoena overbroad and, thus, oppressive. We are mindful that the scope of a subpoena *duces tecum* must not cross the line of reasonableness.

■ The only information provided to the court concerning the actual volume or bulk of the documents at issue is a passing reference to "tens of thousands." However, PHE acknowledges that the United States has agreed to accept a listing of documents previously provided to the government in other actions in place of actual copies of the documents themselves. We are not advised as to the effect this listing would have on the number of documents actually required for production. Without any meaningful information concerning the projected number of documents covered by the subpoena, we cannot determine that the scope is overbroad. PHE has failed to provide the information necessary to substantiate its argument of overbreadth as it relates to the volume of documents requested.

■ PHE also asserts that the subpoena requires production of documents within no meaningful time limit. However, PHE has failed to note any specific problem with the June 1, 1986, date. In the absence of any particularized objection to the June 1, 1986, date, we do not find the date to offend the limits of reasonableness. It was certainly well within the statute of limitations as of the date of the first subpoena, and is not now so far outside the limitation period as to be *ipso facto* impermissible.

■ Finally, PHE contends that compliance with the subpoena will cripple its ability to function effectively. PHE concedes that many documents have been previously provided to the United States in other judicial districts. The United States has agreed to accept a listing in lieu of actual document production for certain requests. Furthermore, nothing in the record before us suggests that PHE must turn over all of its records, thereby leaving it without the means to continue business operations. The subpoena requests copies, not originals, of the specified documents. Even if the subpoena called for the production of originals, nothing would preclude PHE from maintaining copies of its records in order to continue business operations. Therefore, at no time will PHE be required to surrender all access to its business doc-

uments. PHE's bald assertion that compliance will "cripple" its business functions is simply insufficient to warrant quashing of the subpoena.

For the foregoing reasons, we do not find the subpoena *duces tecum* to be overbroad. Therefore, PHE's motion to quash the grand jury subpoena on the ground of overbreadth will be DENIED.

### B. Relevance

PHE asserts that the subpoena *duces tecum* calls for disclosure of information irrelevant to any legitimate investigative purpose. The United States contends that the information sought is generally relevant to the grand jury's investigation concerning possible violations of obscenity statutes, 18 U.S.C. § 1461 *et seq.*

■ In light of the Supreme Court's opinion in *R. Enterprises, Inc.*, PHE's argument that the United States must make a threshold showing of relevance before compliance with the subpoena is required fails completely. The Court unequivocally rejected the theory that the United States bear the initial burden of showing relevance. *See R. Enterprises, Inc.*, 111 S.Ct. at 728. Rather, it is PHE that must first come forward with proof that the subpoena seeks irrelevant information. *See id.*

■ Where unreasonableness is alleged, a court may call upon the government to reveal the general subject matter of the grand jury's investigation before requiring the challenging party to carry its burden of persuasion. *Id.* However, as in *R. Enterprises, Inc.*, we need not resolve this question, as there is no doubt that PHE knows the subject matter of the grand jury's investigation. In its initial response to PHE's motion to quash, the United States indicated that the investigation involved violations of the obscenity statutes, 18 U.S.C. § 1461 *et seq.* Therefore, an initial showing by the United States is unnecessary.

■ PHE admits that it is engaged in the business of selling, among other things, "information concerning sexual activity, sexually candid magazines and films." While PHE contends that these materials are protected by the first amendment, it overlooks the fact that it is the grand jury's task, and not this court's, "to conduct an *ex parte* investigation to determine whether or not there is probable cause to prosecute a particular defendant." *R. Enterprises, Inc.*, 111 S.Ct. at 726. In other words, it is the role of the grand jury, and the grand jury alone, to determine whether the "sexually candid magazines and films" are obscene and, therefore, subject to prosecution. We are convinced that there is "a reasonable possibility that the business records" of PHE will "produce information relevant to the grand jury's investigation" into violation of the obscenity statutes. *See id.* at 729.

PHE has failed to carry its burden of showing "that the information sought bears no conceivable relevance to any legitimate object of investigation by the federal grand jury." *In re Grand Jury Subpoena (Battle)*, 748 F.2d 327, 330 (6th Cir.1984) (quoting *In re Liberatore*, 574 F.2d 78, 83 (2d Cir.1978)).

Therefore, PHE's motion to quash the grand jury subpoena *duces tecum* on the ground of irrelevance will be DENIED.

### III

PHE's second broad ground for quashing the subpoena concerns first amendment considerations. The Supreme Court specifically did not address any issue concerning first amendment claims in *R. Enterprises, Inc.*, because the Court of Appeals did not pass on the issue below. Although we address the first amendment claims separately, we are convinced that they are simply additional factors to be weighed in the balance used to determine whether the subpoena is unreasonable or oppressive under Fed.R.Crim.P. 17(c).

The basis for PHE's argument is threefold: (1) the videotapes and other materials targeted by the grand jury are forms of expression protected by the first amendment; (2) the subpoena *duces tecum* impermissibly chills PHE's exercise of its first amendment rights to distribute information, its customers' rights to receive the material, and its right to associational pro-

tections; and (3) the subpoena acts as a prior restraint by stripping PHE of records necessary to continue business operations. The United States contends that it seeks only business records and not the videotapes themselves and, therefore, PHE's assertion of first amendment protection is misplaced. Similarly, the United States asserts that the relationship between PHE and its customers is not afforded first amendment "associational" protection. The United States does not address the issue of prior restraint.

### A. Expression protected by the first amendment

■ While PHE's contention that the materials it distributes are forms of expression specifically protected by the first amendment may be well taken, the decision concerning whether to charge someone with violating the law is outside the role, responsibility, or power of this court. While a "grand jur[y] [is] not licensed to engage in arbitrary fishing expeditions, nor may [it] select targets of investigation out of malice or an intent to harass," it is the role of a grand jury to determine whether or not a crime has been committed. *R. Enterprises, Inc.*, 111 S.Ct. at 726, 727. In doing so, the grand jury "can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *Id.* at 726 (quoting *United States v. Morton Salt Co.*, 338 U.S. 632, 642–43, 70 S.Ct. 357, 364, 94 L.Ed. 401 (1950)). Regardless of the driving force behind its investigation, the grand jury should not be saddled with "minitrials and preliminary showings" which would "impede its investigation and frustrate the public's interest in the fair and expeditious administration of the criminal laws." *Id.* 111 S.Ct. at 727 (quoting *United States v. Dionisio*, 410 U.S. 1, 17, 93 S.Ct. 764, 773, 35 L.Ed.2d 67 (1973)).

■ A grand jury subpoena is not rendered unreasonable simply because first amendment rights are implicated. Nothing before us indicates that the grand jury is "probing at will and without relation to existing need," or that it is attempting to invade protected first amendment rights for a purpose that is "not germane to the determination of whether a crime has been committed." *See Branzburg v. Hayes*, 408 U.S. 665, 700, 92 S.Ct. 2646, 2666, 33 L.Ed.2d 626 (1972). Therefore, we find PHE's contention that the materials it distributes are protected by the first amendment insufficient to warrant quashing the subpoena.

### B. Chilling effect on first amendment rights

■ PHE has made no meaningful showing of how the exercise of its first amendment rights to distribute the material in question will be "chilled" by compliance with the subpoena at issue. Rather, PHE contends that providing the requested documents puts itself and everyone else in the community "on notice that if they continue to sell such matter, they will be investigated and prosecuted." The grand jury subpoena calls for production of business records and documents only. The subpoena does not seek production of any materials actually distributed by PHE. "Business records do not enjoy the same level of [f]irst [a]mendment protection as non-obscene books and magazines." *Sovereign News Co. v. United States*, 690 F.2d 569, 576 (6th Cir.1982) (citing *Stanford v. Texas*, 379 U.S. 476, 485 n. 16, 85 S.Ct. 506, 512 n. 16, 13 L.Ed.2d 431 (1965)).

It is obvious from the present litigation that the grand jury sitting in the Western District of Kentucky is investigating the distribution activities of PHE. However, the grand jury acts in secrecy and there has been no showing that the investigation has in any way been publicized to anyone other than the parties involved in the current dispute. We see no reason why compliance with the subpoena necessarily infringes upon PHE's future distribution activities. PHE has failed to show that compliance with the subpoena poses a true threat of chilling its exercise of first amendment rights of distribution.

■ PHE also asserts that the subpoena infringes upon its customers' first amendment rights to receive the material

about which records are sought.[4] Once again, PHE fails to demonstrate with any specificity how disclosure of the identified documents actually infringes upon its customers' first amendment rights. The subpoena seeks only disclosure of "all letters of complaint and responses thereto during the period of June 1, 1986, to the present." This request does not infringe upon customers' rights to receive materials distributed by PHE.

PHE also alleges that the private nature of its relationship with its customers, protected by the first amendment, is violated by the above-referenced disclosure request. However, the commercial relationship arising from the transactions between PHE and its customers "is not protected as an associational right arising under the first amendment." *See In re Grand Jury Subpoena Served upon Crown Video*, 630 F.Supp. 614, 619 (E.D.N.C.1986). PHE has provided no information suggesting that it has advocated, in tandem with its clients, any political, economic, religious, or cultural beliefs through their commercial relationship which would give rise to a recognized protected status under the first amendment. *See id.* (citing *NAACP v. Alabama*, 357 U.S. 449, 460, 78 S.Ct. 1163, 1170, 2 L.Ed.2d 1488 (1958)). We do not believe that the relationship between PHE and its customers, developed solely via commercial transactions, is such that it requires first amendment associational protection.[5]

PHE also complains that the request for memoranda and correspondence from consumer and business-oriented organizations during the period of June 1, 1986, to present, also infringes upon its own associational rights protected by the first amendment. However, PHE makes only a passing reference to "organizations with whom PHE *may* have political associations" as the basis for this complaint. (Em-

phasis added). This statement is simply insufficient to establish either a constitutionally protected association or an infringement upon such association.

### C. Prior restraint

PHE contends that the subpoena *duces tecum* effectively acts as a prior restraint because it seeks to strip PHE of business records necessary to conduct its affairs. In support of this contention, PHE relies on *Roaden v. Kentucky*, 413 U.S. 496, 93 S.Ct. 2796, 37 L.Ed.2d 757 (1973).

*Roaden* involved the warrantless seizure of a film being shown at a drive-in theater. *Id.* at 497, 93 S.Ct. at 2797. The sheriff arrested the manager of the theater after viewing the film, but without a warrant or prior judicial determination on the issue of the film's obscenity. *Id.* at 497–99, 93 S.Ct. at 2797–2799.

The issue before the Court concerned "whether the seizure of the film without a warrant was unreasonable under [f]ourth [a]mendment standards and, if so, whether the film was therefore inadmissible at the trial." *Id.* at 501–502, 93 S.Ct. at 2800. The Court found that "seizing a film then being exhibited to the general public" constituted a form of prior restraint. *Id.* at 504, 93 S.Ct. at 2801. The Court also noted, however, that this prior restraint occurred because the police officer obtained the film without the authority of a constitutionally sufficient warrant. *Id.*

*Roaden* is clearly distinguishable from the controversy before us for two primary reasons. First, there is no threat that any film or other expressive material is being seized from PHE. The subpoena seeks only business records. Second, and most importantly, PHE faces no threat of an unconstitutional seizure of its material by law enforcement officers acting on their own conscience, belief, or impulse. Rather, the circumstances before us involve a pre-

---

**4.** PHE directs us to no authority which supports its effort to assert the first amendment rights of third parties.

**5.** Even so, PHE mischaracterizes the actual request of the subpoena *duces tecum*. PHE's argument suggests that the subpoena requires it to

divulge the identities of its customers. However, the grand jury has not requested wholesale discovery of PHE's customer list. Rather, the subpoena seeks only correspondence concerning "letters of complaint and responses thereto."

sumptively lawful and reasonable exercise of the grand jury's function, *i.e.*, subpoena of records in the course of an investigation to determine whether a crime has been committed. The holding of *Roaden* is inapplicable in the matter before us. Further, PHE has not shown that copies of the business records will not suffice for either its purposes or those of the grand jury. We conclude that PHE has failed to establish prior restraint.

### IV

▮ In its supplemental motion to quash, PHE contends that the preliminary injunction issued by the United States District Court for the District of Columbia[6] has some bearing on the issues before us. On April 15, 1992, we conducted a hearing on the effect, if any, of the injunction on the motion to quash pending before this court.

During the hearing, both parties stated that the preliminary injunction does not operate as a bar to the grand jury investigation precipitating the instant subpoena *duces tecum*. PHE suggested that the injunction was a factor which we should consider when evaluating the oppressive or burdensome nature of the subpoena.

The injunction entered by Judge Greene in the District of Columbia action is preliminary relief. Although Judge Greene made a finding of likelihood of success on the merits, the findings have not been made final. The preliminary injunction is not probative or suggestive *ipso facto* of oppression or burdensomeness with regard to the specific subpoena before this court.

### V

For the foregoing reasons, PHE's motion to quash the subpoena *duces tecum* issued to it on November 12, 1991, by a federal grand jury sitting in the Western District of Kentucky will be DENIED by separate order.

---

**6.** *See PHE, Inc. v. United States Dept. of Justice,* 743 F.Supp. 15, 27–28 (D.D.C.1990).